Marshall Wallace for the appellants. Again, thank you very much to Mr. Copeland for his technical assistance. There are five grounds on which the district court decision should be reversed. I want to zero in on the key components of each of those five grounds. Any one of which, once accepted by the The first ground that I want to focus on is actually in a different order than the brief and that is the procedural due process claim. I want to start with that because that I submit is the most straightforward possible path to reversal. The key issue, as all the parties acknowledge here, was does the property interest. Let's examine what the complaint alleges in that regard to determine whether that element is met. The first thing is that the landowners own 250 acres of land in Las Vegas. The complaint next alleges that those 250 acres of land are in the Queens Ridge neighborhood which is an exclusive residential enclave. The third thing that the complaint alleges is that those that 250 acres is woven in and around other high-end residences. So this is valuable land. And then the fourth thing that the complaint alleges about property interest here, all 250 acres, is that it is zoned and was at the time zoned RPD 7 or more dense which allowed for seven housing units per acre. Which means that this land, the 250 acres, had been legislatively determined in the zoning process to permit up to seventeen hundred and fifty housing units on the land. That is very valuable land. The complaint then alleges that due to the improper bias of the council members and the council, the landowners were deprived all use, all development of the 250 acres. I submit to this court that you could not have a more fundamental property interest than the right to develop that land under those circumstances. Mr. Wallace, are you saying if a person owns land, and the right to develop that land is a sufficient interest under the Constitution? That's exactly what I'm saying, your honor. And we've cited cases. What case supports that proposition? Sure, the Squaw Valley development case versus Goldberg cited in our brief. Action Apartment Association versus Santa Monica Rent Control Opinion Board reply brief spells these out. And plainly, when you step back and think about it, the right to develop one's land is perhaps the most important stick in the bundle of sticks that are property rights. Now, don't take my word for that. The Nevada Supreme Court, to which this court must look in identifying constitutionally protected property rights, in the Sisolak case, used that to emphasize that the right to develop land is a key attribute of land that, if taken away unconstitutionally because of bias, gives rise to a due process of violation. So wait a minute, wait a minute. Your statement goes pretty far. I think what you said yes, but you had stated earlier it's zoned. So it seems to me your argument is, you own land and it's zoned a certain way. That means you have a vested constitutional property right to do what you want. But how do you reconcile that with our decision in Gerhardt and also the Nevada Supreme Court's decision in American Western Development versus City of Henderson? Because there, the Nevada court said, who writes the proposed development project to vest, zoning or use approvals must not be subject to further governmental discretionary action affecting project commencement. And the developer must prove considerable reliance on their approvals granted. So you have some zoning, you own some property, but I think it's undisputed you have to go before the government agencies, the state agencies, and then before the City Council and get approval. It's discretionary for the City Council, isn't it? So yes, some, not all of the approvals here were discretionary. But to be clear, for due process purposes, one doesn't need to show a vested property right per se. It's broader, it's inclusive of vested property rights. But we don't even need to worry about that because here we had not one but two trial courts, one of them in a final decision ruling that... Let me stop you there because we know about those decisions. I think they're really not on point. So I want to get back to this issue of what was discretionary. Council, the City Council still has discretion to act under the Nevada Supreme Court's decision in American Western Development. That would seem to suggest that there's no due process right that's vested here because there's nothing left that isn't discretionary and then the developer can't show this considerable reliance that they're going to be able to go forward. So, Your Honor, the law is not that any discretionary decision by the government entity is immunized from constitutional challenge. It's not that if the council had discretion, it can't violate due process rights of the applicant. The question is, is there a property right? And the answer here is, yes, there is. There's the basic right to develop the property. Element two, was there a deprivation of that right? Certainly, and this is where it's not enough to say discretion because we have bias, which is the third element, infecting that discretionary process so that the decision was made as alleged, not because of a valid exercise of discretion, but because of bias due to national origin and religious animus and cronyism. And so it seems like you're now conflating your equal protection and your due process arguments. No, actually, I'm not. The overlap, not surprisingly, quite a bit, but the due process argument does require a lack of process as one of the three are more than adequate. And the Clemens versus airport authority of Washoe County case, which is a Ninth Circuit case, says at a minimum, due process requires a hearing before an impartial tribunal. And that is precisely what the landowners here did not get. That led to the complete denial of any development of the 250 acres. And that under well-established law is a due process violation. So you're saying they had a hearing, clearly there were multiple hearings, but you're saying they didn't have a hearing because it wasn't before an unbiased body. And that's based on your allegations about Mr. Coffin. I didn't see any allegations about anybody else in the city council or the other defendant, Mr. Soroka, I'm mispronouncing his name. I think you got it right. So the answer is that is all that is needed is to have some elements of bias. And here, to be clear, the religious bias is attributed in the first instance only to Mr. Coffin, council member Coffin. But there are ample allegations of bias in favor of the wealthy neighboring landowners that completely made this an unfair proceeding as implemented by Mr. Soroka, the other individual defendant. Was this against your client or was it against covering up space of people looking out their windows? I don't see anything in the record that shows that these landowners were biased against your client because of his religion. They're biased against him because they didn't want somebody to build some big buildings and do away with the value of their market. That certainly isn't the type of because it's not. If there's a if there's a if there's a piece of property right against my property and if they build a house that's going to interview with my view that if I pursue with that, I'm interfering with procedural due process because I'm biased that I want my view. So two bear just bear with me just a second. That's the the the Clemens versus Airport Authority of Washoe County. I believe says that your honor. Let me address your comment where the allegation is that the that in order to favor the personal financial interests of essentially trying to do a trade whereby the cronies of the councilman the public officials where the complaint alleges that it was for that reason in order to financially benefit their colleagues. That is not an impartial tribunal. And yes, that is sufficient bias to satisfy the due process. I thought your argument was that these people were prejudiced against your client based upon his religion. It's not an either or situation, your honor. It's both. Well, I saw that one. That's that's pretty easy to analyze. But I I didn't see the one where if I'm building somebody's building a building next to me, take away my my view that procedural due process is violated. I have no animus against the person. I just want to keep my view. So your honor, the principle is when that neighbors essentially, as alleged here, improperly that satisfies the absence of an impartial decision maker. And I do note that I'm well into my reserve time. I'm happy to answer your question. I've got your I've got your position. Thanks. All right. Thank you. Mr. Burns and Mr. Angulo. Mr. Burns is on the phone and we're going to give you seven minutes. Is Mr. Burns going to go first? Your honor, this is Peter Angulo. Mr. Burns has asked that I go first and I'll briefly address it. And I'll keep track of the time to make sure he gets all the time that he's to which he's entitled. All right, please go ahead. Thank you, your honor. My name is Peter Angulo and I represent the individually named Cooper City Councilman, Bob Coffin and Steve Soroka. There are really three issues before the court today. The first is whether Judge Mahan properly determined that the complaint did not adequately allege an equal protection claim. The second is whether he erred somehow by failing to issue an order specifically stating what the complaint should be allowed to be amended. And the third is whether or not he was correct in deciding as a matter of law based on the allegations of complaint and the statutes that exist in Nevada as to whether or not a vested property right interest have existed in this case, the vision to give rise to due process concerns. Respectfully as to each of those who think Judge Mahan has ruled correctly, briefly just touching on the amended complaint, as we've indicated in our briefing, the fact is that the dismissal of the equal protection claim was without prejudice, which allowed the party to amend their complaint. But instead, they chose to take this up on appeal. And at that point, they made the decision to stand by what they had alleged before the court. And they, having never explained to this court or to Judge Mahan what additional facts they would raise or how those additional facts might impact the case. His decision in that regard cannot be said to be erroneous. As to the due procedural due process, again, briefly, as Judge Mahan noted, both the the city still had the ability to make discretionary choices to approve or disprove projects based on aesthetic value, its impact on the community and so forth. The complaint itself alleges that Mr. Soroka's concern, at least his articulated concern specifically went to that fact that he thought it was a bad development that would have negative implications throughout the entire city. To base his votes on that is not impermissible. And again, because this was still subject to discretion of the city council, there isn't a vested property right to give rights to the due process concern. Well, plaintiffs seem to be drawing or attempting to draw a distinction between the deprivation of sort of core property rights and the deprivation of rights in the form of government benefits. And then they so they argued that the cases you cited up for media updates and wedges ledges are the opposite. How do you respond to that argument? Respectfully, your honor, I disagree. The position that the plaintiffs have asserted in this case is that essentially, because they own a piece of land, they can do virtually whatever they want with it. If the government says you can't, then somehow the constitution can impact. It's simply untrue. If I wanted to build a strip club next to the school, I don't have the right to do that just because I own the land. I can't put up a skyscraper that goes up 30 stories if there are ordinances and provisions that say, no, you're not allowed to do that. The government's allowed to put restrictions that are reasonable. In this case, there's no evidence here, and certainly no allegation or complaint, that no project ever submitted by the appellants would ever be accepted. In fact, they asserted a complaint and alleged that they'd had numerous projects accepted before by this same city council. It's only this one particular project, about which Mr. Siropa said he thought was illegal, had a negative impact on the community, that there was resistance given by the entirety of the city council, not just Mr. Connelly. What's the current status of their applications to develop the land? My understanding, Your Honor, is that they have made no effort to change the application. Their decision was to file lawsuits, a number of lawsuits, and simply stand by their original proposal and not to try to amend it or make any changes to it. So it's been denied? Their applications have been denied? The initial application was determined by Judge Crockett in state court, in a district court matter, to have not followed the proper process. That's been reversed by the Ninth Circuit. The particular proposal was, I think, temporarily denied, and at that point the lawsuit was filed. And I don't believe now, with Judge Crockett's decision having been reversed, that they've resubmitted that plan to the city council. Could I move you to another area? You certainly may. Okay. It seems to me their major complaint here is that they weren't given a fair shake by the city council because there was prejudice against the owner of the property based upon his religion, and apparently there were some statements made, like saying that Mr. Lowy is a crazy Israeli, and a variety of statements. They don't sound very nice, and they look like a little bit of bias against him individually rather than his project. Why isn't that sufficient? Your Honor, respectfully, the comments that we made by Mr. Poppin did not go to his village. The initial comment was his parallel to the way he believed that the appellants were handling these surrounding landowners was similar to the historical event of Prime Minister Netanyahu and his handling of the Palestinians in Israel. It was nothing about religion. It was nothing about national origin. It was nothing about... As we've indicated to the court, it's the functional equivalent of saying, look, I don't like Adolf Hitler. It doesn't mean I'm prejudiced against all people of German origin. It just isn't... It is insufficient to raise that kind of a concern. I will concede that the use of the term crazy Israeli certainly isn't flattering to Mr. Lowy, but it's not, again, suggestive of a bias against him based, again, on race or religion or national origin. Well, do you agree that if the decision was made on the basis of the person's religion that they have a good case? I fully agree, Your Honor, that in fact, if this was a religious bias, okay, that certainly establishes one of the elements necessary for protection. So what is your position then that they failed to meet that burden of showing that the decision was made on the basis of a person's religion? Certainly, Your Honor. Again, initially, because none of the comments went to his religion, none of them referenced Judaism, didn't talk about somebody being Jewish or referring to the word Jew. It doesn't appear in any of his comments. Instead, it was a historical reference to an event that he thought had a parallel to what he was seeing going on in Florida. And again, this is only... Even if you say that Mr. Lowy wouldn't have been completely unbiased, which we strongly disagree, the simple truth is that still in this situation, the entire city council has voted, and there's no evidence in the complaint, no suggestion that somehow he was handing out anti-Judaism pamphlets, that they accepted it, that the city council had a bias. And in fact, that argument would be upholstered by the fact that the complaint itself asserts that Mr. Lowy and the remaining appellants had already had a number of projects, including the Nevada Supreme Court appellate building down here in Las Vegas, approved by the city council and voted, so that there isn't that bias that paints the process. Other projects have been approved, just this particular project wasn't acceptable in the way it was framed. There's no one who said that they'll never be able to build a 100, never be any building. Rather, it's simply been the assertion that this particular project and the condition in which it was found was impermissible. And with that, Your Honor, unless there are additional questions, I'd certainly be happy to answer them. Otherwise, I'll turn the time over to Mr. Burns, so he doesn't get mad at me if I've stolen too much of his time. Thank you. Thank you, Your Honor. My name is Phil Burns. I'm representing the city in this matter. Before I begin my argument, Judge Bated asked a question about the status of these applications. I've been more involved in the various applications than Mr. Angulo. I could expand on that if the judge is interested in that. I'm sorry, go ahead. There's been a series of applications on different parts of this property. The city council approved a 422-unit condominium application that was subsequently overturned in a district court action by the neighbors. The district court decision was subsequently overturned by the Nevada Supreme Court, so at this time, those units are fully entitled and can proceed with development, although I don't believe the developer has taken any action on that. Mr. Burns, that would cover how many acres? That was on a 17-acre parcel of the 250 acres. All right, thank you. There was another application on, I believe, was a 60-acre parcel to put in a series of single-family homes. That was denied by the city council on a series of discretionary applications. There was a development agreement for the entire 250 acres that the city council denied, and there was an application for, I can't remember the number of acres, for another single-family residential development that was stricken for procedural grounds, and that application has never been renewed. So there has been a series of applications for different portions of the property. Some have been approved, some have not. All right. On the due process claim, Nevada law is clear that if there are any discretionary approvals yet to have been granted on the property, due process, you have no vested right, and due process doesn't attach. The complaint in paragraph 48 alleges the type of applications that were pending before the city council, site development review, zone change requests, waiver requests, and general plan amendments. All of those applications are discretionary under the city code. In fact, in the Stratosphere versus City of Las Vegas case, the Nevada Supreme Court said that the, or held that the city site development review process is a discretionary process. So it's clear under due some sort of protected property right, due process doesn't attach, and the lack of a vested right is fatal to a due process claim. The developers council has cited the Sisolak case. Sisolak case is a Nevada Supreme Court case. It's not a due process case. It's a takings case under the Fifth Amendment and under the Nevada Constitution. That's not analogous to a due process claim. In the case where somebody alleges that all development rights to a parcel have been taken, the proper remedy would be a takings claim, not a due process claim. So there is no takings claim alleged in this case. There are other cases that involve that. As to the class of one equal protection claim, that I believe is a pure pleading matter. Any plaintiff has to show some Is there some other party who is substantially similar who has been treated differently? There are no factual allegations of any similar development to this case, and this is a more unusual development. As the complaint establishes, it's a golf course conversion out of the middle of a common interest community. The plaintiff has pointed to no similar circumstances where someone sought to redevelop a golf course or other open space in such a community and was treated differently than them. So that in and of itself I believe is fatal to their class of one equal protection claim. And as to the supposed bias of council and council, there's no indication that any of the other seven members of the city council had a similar bias. I don't believe that any basis on the pleadings to impute any alleged bias to the other members of the council. Based on that, I seem to have 30 seconds left, so if there are no questions, I will submit it. All right. Thank you very much, Mr. Burns. All right, so back to Mr. Wallace. Let's see. There we go. We have your clock ready. You have two minutes and 16 seconds. Please go ahead. Let me focus upon what Mr. Angulo said about the allegations didn't go to religion. They only talked about association with Prime Minister Netanyahu. That exemplifies what is going on here. We saw it in the briefs. The appellees are asking this court to make factual determinations, to weigh the evidence, and that is not what one does on a pleadings motion, what we have here. The pleadings have to be assumed to be true. And so that commentary, probably more eloquently than I can, communicates to this court that these are not issues that can be resolved at the pleading stage with the facts pled. Zeroing in further on that point, I want to remind the panel that the city staff, as alleged, and in fact, worked very closely and meticulously with the landowners here to make sure that the plans that were submitted were consistent with the city's ordinances with good land use practices. The city of Las Vegas planning commission agreed and wholeheartedly approved the development plans for the 250 acres. Yet when things got to the city council, after the landowners had done everything by the book, then that's when things became totally unfair and the decisions were made not because of the land use planning issues, not because of the zoning, which permitted much more than the density applied for. As alleged, and as this court must accept as true, the bias infected the decision. The appellees have no answer for the Avenue 6E case, which makes that very clear. All you need is a motivating factor of bias, and we have expressly alleged that, and we have the right, the landowners have the right to get into discovery with these pleadings to find out, to prove that that was the case. Before you sign off, I have one question I forgot to ask earlier. One of the issues you raised is denial of leave to amend your complaint, isn't that right? That's correct. Now tell me very briefly, what additional new facts are you prepared to allege to meet the shortcomings that the district court described? So your honor, first that that's not our burden at this stage, but if, but certainly at a minimum. Well it's your burden in this sense, you know, if we conclude that an amendment would be feudal, I mean that's enough to affirm the denial of leave to amend, right? So you have to show something more. What more can you show? So first of all, even the district court, by dismissing without prejudice, acknowledged that leave to amend would not be feudal, so that would not be an appropriate outcome at this court. The facts that we would amend to show would be the litany of development applications in comparable circumstances to these ones that were approved, and the absence of the same sort of bias infecting those approvals. So we stand ready to specify, to itemize those, but it is not a pleading requirement that one prove their trial evidence for the purposes of pleadings. It is enough for the complaint to allege, and this is for class of one discrimination, that other similarly situated citizens were not treated the same way, and that is indeed the case here. All right, thank you counsel. I don't see any further questions, so we will take this case under submission. Thank you. Thank you your honor, appreciate it. Can I request a five minute recess? Yes, we'll have Kwame disconnect the feed, the public feed, move us into the separate room, and let's take a few minute break while we're doing that. Thank you. Have a good day. Thank you.
judges: Wallace, Tashima, Bade